# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONTE WEATHERINGTON,<br><br>             Petitioner,<br><br>      v.<br><br>JAMES A. YATES,<br><br>             Respondent. | 1:11-cv-00009 AWI MJS HC<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent is represented in the action by Kasey E. Jones, Esq., of the Office of the Attorney General for the State of California.

**I.     BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections. On January 5, 2011, Petitioner filed the instant petition challenging a 2009 prison disciplinary proceeding finding Petitioner guilty of possession of fermentation or distillation materials and triggering a loss of thirty days good time credits. (See Pet., ECF No. 1, pp. 28-29.)

On June 16, 2011, Respondent filed a motion to dismiss the petition for failure to state a cognizable claim alleging that the disciplinary decision does not affect the fact or duration

of Petitioner's confinement.

## II.	DISCUSSION

### A.	Cognizability of Petitioner's Claim

#### 1.	Respondent's Assertions

Respondent, in his motion to dismiss, contends that because Petitioner has already served beyond his minimum eligibility parole date ("MEPD") and is already being considered for parole suitability hearings, the disciplinary violation does not necessarily affect or otherwise impact the fact or duration of Petitioner's confinement. Thus, Respondent argues that Petitioner's claim does not warrant review in these federal habeas proceedings.

#### 2.	Supreme Court Decisions Regarding Habeas Corpus Jurisdiction

In general, the Supreme Court has explained that federal habeas jurisdiction lies for claims that go to "the validity of the fact or length of [prison] confinement." See Preiser v. Rodriguez, 411 U.S. 475, 490, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973).

The Supreme Court last discussed the distinction between habeas corpus and § 1983 in Skinner v. Switzer, 131 S. Ct. 1289 (2011).  The Court explained that "when a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence, the Court held, § 1983 is not an available remedy." Skinner, 131 S. Ct. at 1298 (citing Heck v. Humphrey, 512 U.S. 477 (1994)).

Further, the Court used conditional language in describing how in cases that do not "necessarily spell speedier release, however, suit *may* be brought under § 1983." Skinner, 131 S. Ct. at 1293 (citation omitted, emphasis added).

The Supreme Court's historical approach to the issue is enlightening. In Wilkinson, the Court described its decision in Preiser.

> In that case, state prisoners brought civil rights actions attacking the constitutionality of prison disciplinary proceedings that had led to the deprivation of their good-time credits. Id., at 476, 36 L. Ed. 2d 439, 93 S. Ct. 1827. The Court conceded that the language of § 1983 literally covers their claims. See § 1983 (authorizing claims alleging the deprivation of constitutional rights against every "person" acting "under color of" state law). But, the Court noted, the language of the federal habeas statutes applies as well. See 28 U.S.C. § 2254(a) [28 USCS § 2254(a)] (permitting claims by a person being held "in custody in violation of the Constitution"). Moreover, the Court observed, the

> language of the habeas statute is more specific, and the writ's history makes clear that it traditionally "has been accepted as the specific instrument to obtain release from [unlawful] confinement." Preiser, 411 U.S., at 486, 36 L. Ed. 2d 439, 93 S. Ct. 1827. Finally, habeas corpus actions require a petitioner fully to exhaust state remedies, which § 1983 does not. Id., at 490-491, 36 L. Ed. 2d 439, 93 S. Ct. 1827; see also Patsy v. Board of Regents of Fla., 457 U.S. 496, 507, 73 L. Ed. 2d 172, 102 S. Ct. 2557 (1982). These considerations of linguistic specificity, history, and comity led the Court to find an implicit exception from § 1983's otherwise broad scope for actions that lie "within the core of habeas corpus." Preiser, 411 U.S., at 487, 36 L. Ed. 2d 439, 93 S. Ct. 1827.

Wilkinson, 544 U.S. at 78-79. The Wilkinson court held that a deprivation of good-time credits falls within the "core of habeas corpus." Id. ("Because an action for restoration of good-time credits in effect demands immediate release or a shorter period of detention, it attacks the very duration of . . . physical confinement, and thus lies at the core of habeas corpus. Therefore, the Court held, the Preiser prisoners could not pursue their claims under § 1983.") (citations omitted).

Wilkinson also described how the Court came to the same conclusion in Wolff v. McDonnell, 418 U.S. 539, 554, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974). In Wolff, the Court held that the prisoners could not use § 1983 to obtain restoration of credits because Preiser had held that "an injunction restoring good time improperly taken is foreclosed." Wilkinson, 544 U.S. at 79, citing Wolff, 418 U.S., at 555. However, the Court described when § 1983 could be used to attack the disciplinary proceeding.

> "[T]he inmates could use § 1983 to obtain a declaration ("as a predicate to" their requested damages award) that the disciplinary procedures were invalid. Ibid. They could also seek "by way of ancillary relief[,] an otherwise proper injunction enjoining the *prospective* enforcement of invalid prison regulations." Ibid. (emphasis added). In neither case would victory for the prisoners necessarily have meant immediate release or a shorter period of incarceration; the prisoners attacked only the "wrong procedures, not . . . the wrong result (i.e., [the denial of] good-time credits)." Heck, supra, at 483, 129 L. Ed. 2d 383, 114 S. Ct. 2364 (discussing Wolff)."

Wilkinson, 544 U.S. at 80.

Lastly, the Supreme Court in Wilkinson described its decision in Edwards v. Balisok:

> Finally, in Edwards v. Balisok, [520 U.S. 641, 648, 137 L. Ed. 2d 906, 117 S. Ct. 1584 (1997)], the Court returned to the prison disciplinary procedure context of the kind it had addressed previously in Preiser and Wolff. Balisok sought "a declaration that the procedures employed by state officials [to deprive him of good-time credits] violated due process, . . . damages for use of the

unconstitutional procedures, [and] an injunction to prevent future violations." 520 U.S., at 643, 137 L. Ed. 2d 906, 117 S. Ct. 1584. Applying Heck, the Court found that habeas was the sole vehicle for the inmate's constitutional challenge insofar as the prisoner sought declaratory relief and money damages, because the "principal procedural defect complained of," namely, deceit and bias on the part of the decisionmaker, "would, if established, necessarily imply the invalidity of the deprivation of [Balisok's] good-time credits." 520 U.S., at 646, 137 L. Ed. 2d 906, 117 S. Ct. 1584. Hence, success on the prisoner's claim for money damages (and the accompanying claim for declaratory relief) would "necessarily imply the invalidity of the punishment imposed." Id., at 648, 137 L. Ed. 2d 906, 117 S. Ct. 1584. Nonetheless, the prisoner's claim for an injunction barring future unconstitutional procedures did not fall within habeas' exclusive domain. That is because "[o]rdinarily, a prayer for such prospective relief will not 'necessarily imply' the invalidity of a previous loss of good-time credits." Ibid.

Wilkinson, 544 U.S. at 80-81.

In synthesizing this linage of cases, the Supreme Court found that, "[t]hese cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation)--no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)--if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson, 544 U.S. 81-82.

It appears, based on such precedent, the Supreme Court has determined that habeas corpus holds exclusive jurisdiction to claims that seek to invalidate the result of the disciplinary hearing and resulting credit loss. However, claims that challenge procedural aspects of such a hearing, but not the ultimate determination, need not necessarily proceed by way of habeas corpus. The Supreme Court does not, however, address whether claims that fall out of the "core" of habeas corpus may be brought by way of habeas corpus, § 1983, or both.

   3. Ninth Circuit Decisions

The Ninth Circuit has also wrestled with issues arising out of the interplay between habeas corpus and § 1983 jurisdiction. Ninth Circuit jurisprudence is expressed in three opinions: Bostic v. Carlson, 884 F.2d 1267 (9th Cir. 1989), Ramirez v. Galaza, 334 F.3d 850 (9th Cir. 2003), and Docken v. Chase, 393 F.3d 1024 (9th Cir. 2004). The Court shall address each in turn.

    a. Bostic - Habeas Relief Available Where Expungement "Likely to Accelerate Eligibility" for Parole

In Bostic, the Court of Appeals reviewed district court dismissals of a series of habeas petitions filed by a petitioner who in each was challenging disciplinary actions taken against him. 884 F.2d at 1269. Prison officials had assessed a forfeiture of good-time credits for some of the infractions, but the remainder did not carry a loss of time credits - only a term of segregated housing. Id. at 1269. In each of the petitions, the petitioner sought expungement of the infractions from his disciplinary record. Id. The court "assume[d]" that habeas jurisdictions existed over all the petitions, even those challenging discipline with no attendant credit loss, stating:

> Habeas corpus jurisdiction is available under 28 U.S.C. § 2241 for a prisoner's claim that he has been denied good time credits without due process of law. [citations] Habeas corpus jurisdiction is also available for a prisoner's claims that he has been subjected to greater restriction of his liberty, such as disciplinary segregation, without due process of law. [citations] *Habeas corpus jurisdiction also exists when a petitioner seeks expungement of a disciplinary finding from his record if expungement is likely to accelerate the prisoner's eligibility for parole.* [McCollum v. Miller, 695 F.2d 1044, 1047 (7th Cir. 1982)].

Id. at 1269 (emphasis added). The court did not elaborate on when expungement would be "likely to accelerate" parole eligibility, or otherwise differentiate between parole eligibility and parole suitability.

    b. Ramirez - Habeas Corpus and § 1983 Relief Are Mutually Exclusive

The Ninth Circuit revisited Bostic's statements on habeas jurisdiction in Ramirez, 334 F.3d at 858-59. In Ramirez, a prisoner brought a civil rights action under § 1983, not a habeas petition, to challenge procedures used in imposing disciplinary sanctions of ten days of disciplinary detention, 60 days loss of privileges and a referral to administrative segregation. Id. at 852-53. He was not subject to a loss of good time credits. Id. He sought expungement of the disciplinary record from his file and an injunction prohibiting the state from considering it "when they fix plaintiff's terms and decide whether plaintiff should be released on parole." Id. at 859 n. 6.

The district court dismissed the case, finding it barred by Heck v. Humphrey, 512 U.S. 477 (1994), reasoning that Ramirez must invalidate the disciplinary sentence before seeking

damages under § 1983.[1]

The Court of Appeals reversed, holding that the favorable termination rule does not apply to prison disciplinary sanctions that do not necessarily affect the fact or length of a prisoner's confinement. Id. at 854-58. The Ninth Circuit relied on decisions from other circuits involving cases where petitioners challenged disciplinary violations that resulted in administrative segregation, termination of a prison job, or placement in restrictive custody and denial of therapy. Those sanctions were not considered to affect the overall length of the prisoner's confinement, and the claims were allowed to proceed by way of § 1983 actions.

In applying the standard, the court rejected the state's argument that the plaintiff's claim that his disciplinary hearing violated due process was "logically inseparable from an attack on the outcome of that hearing, and that a judgment in his favor would necessarily imply the invalidity of his disciplinary conviction." Id. at 859. The state had failed to show that expungement of the disciplinary finding would necessarily accelerate plaintiff's release because the parole board could still deny parole on the basis of other factors. Id. ("As Ramirez's suit does not threaten to advance his parole date, his challenge to his disciplinary hearing is properly brought under § 1983.)

In the course of its analysis, the court discussed Bostic in some detail. Specifically, the court found that "Bostic does not hold that habeas jurisdiction is always available to seek the expungement of a prison disciplinary record. Instead, a writ of habeas corpus is proper only where expungement is "*likely* to accelerate the prisoner's eligibility for parole." Bostic, 884 F.2d at 1269 (emphasis added). Ramirez v. Galaza, 334 F.3d at 858. The court explained that Bostic relied on Seventh Circuit authority that a prisoner could challenge a disciplinary

---

[1] The Supreme Court set forth the doctrine known as the "favorable termination rule in Heck v. Humphrey. It held:

> In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by action whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . . or called into question by a federal court's issuance of a writ of habeas corpus . . . .

Ramirez v. Galaza, 334 F.3d 850, 855 (9th Cir. 2003) (citing Heck v. Humphrey, 512 U.S. at 486-67.)

sentence through habeas corpus when it might delay his release on parole. Id. In concluding, the court stated, "Bostic thus holds that the likelihood of the effect on the overall length of the prisoner's sentence from a successful § 1983 action determines the availability of habeas corpus." Id. at 858.

From this, the Ninth Circuit reasoned that § 1983 and habeas corpus were mutually exclusive. Importantly, the Ninth Circuit's discussion in Ramirez was focused on the determination of when § 1983 actions were available in light of the favorable termination rule. The court was not focused on the limits to habeas corpus jurisdiction.

With admirable insight, United States Magistrate Judge Edmond Brennan discussed the reasoning of the Ramirez court in Jackson v. Swarthout, Civ. No. 10-494, 2011 U.S. Dist. LEXIS 97713, 2011 WL 3875859, at *4-6 (E.D. Cal. Aug. 31, 2011), report and recommendation adopted by, 2011 U.S. Dist. LEXIS 110136, 2011 WL 4543192 (E.D. Cal. Sept. 27, 2011), stating:

> From this, the court made the following leap, assuming that the courts' jurisdiction over habeas petitions and their jurisdiction over § 1983 are mutually exclusive: "]H]abeas jurisdiction is absent, and a § 1983 action proper, where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence." Id. at 859. For ease of discussion, this quote will be referred to herein as the "mutual exclusivity rule." This language has created uncertainty, because challenges to prison conditions that will necessarily shorten the prisoner's sentence fall squarely within the "core" of habeas jurisdiction identified in Preiser, and the Ramirez language indicates that only "core" habeas cases can be brought in federal habeas petitions. It is important to recall that Prieser simply held that "core" cases had to be brought in habeas petitions but did not hold that habeas jurisdiction was limited to such cases. However, Bostic — quoted with apparent approval by the Ramirez panel — squarely found habeas jurisdiction to exist in a non — "core" situation, where success would not necessarily spell earlier release, but was merely likely to accelerate parole-eligibility. Thus, Ramirez's mutual exclusivity rule quoted above appears inconsistent both with the opinion's prior reliance on Bostic for the proposition that "the likelihood of the effect on the overall length of prisoner's sentence from a successful § 1983 action determines the availability of habeas corpus" and with Bostic itself.

        c.     Docken - Habeas Corpus and § 1983 Relief Are Not Mutually Exclusive

One year after Ramirez, the court again analyzed habeas and § 1983 jurisdiction in Docken v. Chase, 393 F.3d at 1026-31. In Docken, the petitioner brought a habeas corpus action to challenge the timing of his parole-eligibility reviews. Id. at 1025-26. The district court

had concluded that the claim could only be brought under § 1983 rather than habeas, because the plaintiff's success in the case would not "entitle" him to release, just an earlier eligibility review. Id.

In reversing that conclusion, the Court of Appeals discussed at length U.S. Supreme Court and Ninth Circuit precedent. First, in summarizing Supreme Court authority, the Court held that such cases only defined the limitations on § 1983 in light of the exclusive jurisdiction for certain claims only cognizable in habeas. Specifically, the court stated:

> Thus, although Supreme Court case law makes clear that § 1983 is not available where a prisoner's claim "necessarily" implicates the validity or duration of confinement, it does not set out any mirror-image limitation on habeas jurisdiction. *The Court's central concern, in all of the cases cited above, has been with how far the general remedy provided by § 1983 may go before it intrudes into the more specific realm of habeas, not the other way around.* At the same time, though the Court has so suggested, it has never squarely held that there is an area of overlap between state habeas and § 1983 prisoner suits. Instead, it has policed the distinction between the two remedies solely by defining the limits of § 1983, as in Heck, and by defining those classes of claims that must be brought through habeas, as in Preiser. *Put simply, when the Supreme Court has concerned itself with the interaction between § 1983 and habeas, it has looked in only one direction.*

Docken, 393 F.3d at 1028 (emphasis in original).

Next, the Ninth Circuit explained how in Bostic, the court found certain claims outside of the "core" habeas claims were still cognizable by way of habeas corpus. Id. at 1028-29. The court explained:

> Importantly, in speaking of claims only "likely to accelerate" eligibility for parole, Bostic defined a class of suits outside the "core" habeas claims identified in Preiser. Success on the merits in such cases would not "*necessarily*" implicate the fact or duration of confinement. Instead, such claims have, at best, only a *possible* relationship to the duration of a prisoner's confinement, as eligibility for parole is distinct from entitlement to parole.

Id. at 1028-29 (emphasis in original). Accordingly, the court, citing Bostic, acknowledged, based on its own precedent, that habeas jurisdiction was available in some non "core" circumstances. See id. ("In [Bostic], for example, we held that 'habeas corpus jurisdiction... exists when a petitioner seeks expungement of a disciplinary finding from his record if expungement is likely to accelerate the prisoner's eligibility for parole.'").

The Docken court then described two prior Ninth Circuit decisions, Butterfield v. Bail,

1   120 F.3d 1023, 1024 (9th Cir. 1997) and Neal v. Shimoda, 131 F.3d 818 (9th Cir. 1997), and
2   attempted to reconcile their seemingly disparate holdings. Docken, 393 F.3d at 1029. In
3   Butterfield, the court held that challenges to the procedures used in denying parole are only
4   cognizable via habeas. Id. However, the court observed that "a change in the procedures
5   governing parole review will not *necessarily* affect the duration of confinement, although it
6   certainly could. Id. (emphasis in original). In Neal v. Shimoda, two prisoners challenged their
7   administrative placement in a treatment program that made them ineligible for parole. The
8   prisoners styled their claims as § 1983 actions against responsible prison officials. The court
9   affirmed the propriety of § 1983 as a successful challenge "will in no way *guarantee* parole
10  or necessarily shorten their prison sentences" and thereby does "not necessarily imply the
11  invalidity of their convictions or continuing confinement" Docken, 393 F.3d at 1029 (citing
12  Neal, 131 F.3d at 824) (emphasis in original).

13  Based on these cases, the court attempted to reconcile the distinctions between
14  habeas corpus and § 1983 jurisdiction. The court did so by regarding "Neal as holding only
15  that § 1983 was an *appropriate* remedy in that case, without reaching the issue of whether it
16  was the *exclusive* remedy. Certainly, nothing in the Neal opinion suggests that § 1983 was
17  available to the prisoners in Neal *in lieu of habeas*." Id., 393 F.3d at 1030 (emphasis in
18  original).

19  The court then reviewed case law and determined that only the Seventh Circuit has
20  even implicitly stated that habeas and § 1983 can be mutually exclusive. Id.  Based on
21  decisions of other circuits and the Supreme Court, the court held:

22  > As outlined above, the question of the relationship between habeas and
23  > § 1983 relief has only explicitly come up before in converse form: whether claims
24  > are not cognizable under § 1983 because their resolution will necessarily impact
25  > the fact and duration of confinement. In the only instance where the Supreme
    > Court addressed whether habeas and § 1983 are necessarily mutually
    > exclusive, the suggestion was that they are not. See Preiser, 411 U.S. at 499;
    > id. at 503-04 (Brennan, J., dissenting). We agree.

26  Docken, 393 F.3d at 1031 (further stating that the court freed itself from the "erroneous
27  constraints of deciding whether Docken's claim is cognizable via habeas as an either/or
28  proposition."). Finally, in determining that claims which challenged procedures that lengthen

U.S. District Court
E. D. California                                             -9-

the period between parole review were potentially cognizable in habeas, the court should be reluctant to constrain its jurisdiction to hear such claims. Id. ("Ultimately, though Docken's claim may not be the kind of "core" challenge the Preiser Court had in mind, the potential relationship between his claim and the duration of his confinement is undeniable. In such a case, we are reluctant to unnecessarily constrain our jurisdiction to entertain habeas petitions absent clear indicia of congressional intent to do so." (citing INS v. St. Cyr, 533 U.S. 289, 150 L. Ed. 2d 347, 121 S. Ct. 2271 (2001); Flores-Miramontes v. INS, 212 F.3d 1133 (9th Cir. 2000)).

### 4. Subsequent District Court Approaches Diverge

Despite the Ninth Circuit's attempt to clarify the distinction between habeas corpus and § 1983 jurisdiction, significant confusion remains. As explained by Judge Bommer in Saif'ullah v. Haviland, 2011 U.S. Dist. LEXIS 126249 (E.D. Cal. Oct. 31, 2011):

> [D]istrict courts have taken divergent views on whether a claim such as the one that Petitioner raises ... is cognizable in federal habeas proceedings. Compare, Allen v. Swarthout, Civ. No. 10-3257, 2011 WL 2075713, at *3 (E.D. Cal. May 23, 2011) (finding habeas jurisdiction where petitioner demonstrated that it was "at least 'likely' that expungement of the disciplinary finding could accelerate his eligibility for parole"); report and recommendation adopted by, 2011 WL 2680756 (E.D. Cal. July 8, 2011); Hardney v. Carey, Civ. No. 06-300, 2011 WL 1302147, at *8 (E.D. Cal. Mar. 31, 2011) (same); Drake v. Felker, Civ. No. 07-577, 2007 WL 4404432, at *2 (E.D. Cal. Dec. 13, 2007) ("The Court finds that Petitioner's application is cognizable under 28 U.S.C. § 2254 to the extent it raises concern that the disciplinary finding will one day affect Petitioner's eligibility for parole."); with Norman v. Salazar, Civ. No. 08-8532, 2010 WL 2197541, at *2 (C.D. Cal. Jan. 26, 2010) ("The mere possibility that the 2006 disciplinary conviction could be detrimental to Petitioner in future parole hearings is too speculative to serve as the basis for a habeas corpus petition."), report and recommendation adopted by, 2010 WL 2197542 (C.D. Cal. May 26, 2010). Judge Hollows, citing to relevant authority, recently determined that the majority of courts considering this issue have found habeas jurisdiction to exist. Bailey v. Swarthout, Civ. No. 10-2454, 2011 WL 4056051, at *4 (E.D. Cal. Sept. 12, 2011) [*45] (citing Morris v. Haviland, Civ. No. 10-897, 2011 WL 3875708 (E.D. Cal. Sept. 1, 2011); Allen, 2011 WL 2075713, Hardney, 2011 WL 1302147, Johnson v. Swarthout, Civ. No. 10-1568, 2011 WL 1585859 (E.D. Cal. Apr. 22, 2011); Foster v. Washington-Adduci, Civ. No. 09-7987, 2010 WL 1734916 (C.D. Cal. Mar. 24, 2010), report and recommendation adopted by, 2010 WL 1734915 (C.D. Cal. Apr. 27, 2010); Murphy v. Dep't of Corrs. & Rehabilitation, Civ. No. 06-4956, 2008 WL 111226 (N.D. Cal. Jan. 9, 2008); Drake, 2007 WL 4404432).

"Thus, there is a split even within the Eastern District of California regarding whether habeas jurisdiction exists" over claims of the exact same nature as Petitioner's." Saif'ullah,

2011 U.S. Dist. LEXIS 126249 at *32-53.

Rather than struggle with the complex and problematic determination as to whether the claim may proceed by way of a petition of habeas corpus, judicial economy is better served to address the claims on the merits.

### B. Legal Standards

Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases.

Moreover, the Advisory Committee Notes to Rule 8 of the Rules Governing Section 2254 Cases indicates that the court may dismiss a petition for writ of habeas corpus either on its own motion under Rule 4, pursuant to the respondent's motion to dismiss, or after an answer to the petition has been filed. See, e.g., Miles v. Schwarzenegger, 2008 U.S. Dist. LEXIS 72056, 2008 WL 3244143, at *1 (E.D. Cal. Aug. 7, 2008) (dismissing habeas petition pursuant to respondent's motion to dismiss for failure to state a claim). However, a petition for writ of habeas corpus should not be dismissed without leave to amend unless it appears that no tenable claim for relief can be pleaded were such leave granted. Jarvis v. Nelson, 440 F.2d 13, 14 (9th Cir. 1971).

Because the petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies to the petition. Lindh v. Murphy, 521 U.S. 320, 327, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997).

A district court may entertain a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court on the ground that the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2254(a), 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).

Title 28 U.S.C. § 2254 provides in pertinent part:

(d) An application for a writ of habeas corpus on behalf of a person in custody

pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts [*9] in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption or correctness by clear and convincing evidence.

The Petitioner bears the burden of establishing that the decision of the state court was contrary to, or involved unreasonable application of, the precedents of the United States Supreme Court. Lambert v. Blodgett, 393 F.3d 943, 970 n.16 (9th Cir. 2004); Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).

**C.    Analysis**

Petitioner claims that there was no evidence to find him guilty of the disciplinary violation because his cellmate confessed that the alcohol was his, and Petitioner was not aware that there was alcohol in his cell. (Pet. at 4.) Petitioner does not raise any due process concerns regarding notice, the ability to present evidence, or written notification of the finding of the disciplinary officer. Accordingly, the Court shall only determine if there was some evidence to find him guilty of the violation. See Superintendent, etc. v. Hill, 472 U.S. 445, 454-455 (1984).

**1.    State Court Opinion**

The last reasoned state court decision is from the Fresno County Superior Court's October 23, 2009 decision denying petitioner's habeas petition. After describing the relevant 'some evidence' standard, the court found:

> Likewise, here the petitioner has failed to show that there was not "some evidence" to support the finding of guilt. Although petitioner claims that there was no evidence showing that he directly possessed or controlled the alcohol, there was alcohol in petitioner's cell, and that petitioner had access to the alcohol. (See Exhibit B to petition, Rules Violation Report, p. 1.) The report indicates that the alcohol was in a jar on the floor between the lower bunk and

> the toilet (Ibid.) Thus, the alcohol was in an area that was within petitioner's control, and the hearing officer was entitled to conclude that petitioner jointly possessed the alcohol with his cellmate.
>
> While petitioner claims that he had no knowledge that the alcohol was in his cell, the hearing officer was entitled to disbelieve his claims and conclude that the alcohol was possessed by both petitioner and his cellmate. This court cannot reexamine the entire record or weigh conflicting evidence. Instead, the court must affirm the hearing officer's decision as long as it is supported by the evidence. (In re Zepeda, supra, at 1500.) Here, there was some evidence to support the decision, so the court cannot grant relief.

(Pet. at 46-47.)

### 2. Due Process

The law concerning a prisoner's Fourteenth Amendment liberty interest in good time credit is set forth in Wolff v. McDonnell, 418 U.S. 539 (1974). While the United States Constitution does not guarantee good time credit, an inmate has a liberty interest in good time credit when a state statute provides such a right and delineates that it is not to be taken away except for serious misconduct. See id. at 557 ("It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior."); id. ("[T]he State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance …."); id. at 558 (holding that "[s]ince prisoners in Nebraska can only lose good-time credits if they are guilty of serious misconduct, the determination of whether such behavior has occurred becomes critical, and the minimum requirements of procedural due process appropriate for the circumstances must be observed").

Prisoners cannot be entirely deprived of their constitutional rights, but their rights may be diminished by the needs and objectives of the institutional environment. Wolff, 418 U.S. at 539. Prison disciplinary proceedings are not part of a criminal prosecution, so a prisoner is not afforded the full panoply of rights in such proceedings. Id. at 556. Thus, a prisoner's due process rights are moderated by the "legitimate institutional needs" of a prison. Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989), citing Superintendent, etc. v. Hill, 472 U.S. 445, 454-455 (1984).

When a prison disciplinary proceeding may result in the loss of good time credits, due process requires that the prisoner receive: (1) advance written notice of at least 24 hours of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action. Hill, 472 U.S. at 454; Wolff, 418 U.S. at 563-567.

In addition, due process requires that the decision be supported by "some evidence." Hill, 472 U.S. at 455, citing United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S. 103, 106 (1927). In Hill, the United States Supreme Court explained that this standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced . . ." Id. "Ascertaining whether this standard is satisfied does not require an examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Hill, 472 U.S. at 456. Instead, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-456. The Court justified this lesser standard as follows:

> We decline to adopt a more stringent evidentiary standard as a constitutional requirement. Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. The fundamental fairness guaranteed by the Due Process Clause does not require the courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context.

Id. at 456. (citations omitted.)

"The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." Hill at 457. Even where, as in Hill, the evidence in the case "might be characterized as meager," if "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary," those findings must be upheld. Id. Thus, if the procedures listed above are afforded to an inmate, and "some evidence" supports the hearing officer's decision, the requirements

of due process are satisfied. Hill, 472 U.S. at 455; Bostic v. Carlson, 884 F.2d at 1269-1270.

### 3. Analysis

Here, Petitioner was charged with, and found guilty of possession of fermentation or distillation materials. The evidence presented at the disciplinary hearing and relied upon by the hearing officer included an incident reported by Officer J. Carter on December 28, 2008. (Pet. at 28.) According to the officer, he observed Petitioner's cellmate walk out of the cell with an item covered in a sheet. The officer removed the sheet and found a five pound bag containing what the officer knew to be inmate manufactured alcohol. The officer then searched the cell and found a coffee jar containing alcohol in the cell. Petitioner was charged with possession of fermentation or distillation materials. (Id.)

On January 15, 2009, the disciplinary hearing was held. (Id.) Petitioner appeared at the hearing and plead guilty. (Id. at 30.)

In the facts and circumstances presented here, Petitioner was not denied due process. Petitioner only contends that there was not sufficient evidence to find him guilty of the disciplinary violation. At the hearing, the hearing officer found petitioner guilty based upon the fact that there was alcohol in his cell and that he therefore had access to the alcohol. Since the alcohol was in an area within Petitioner's control, the hearing officer found that he jointly possessed the alcohol with his cellmate. Based on the alcohol found in Petitioner's cell, the hearing officer reasonably inferred that Petitioner was in possession of fermentation or distillation materials. Accordingly, the "some evidence" standard has been met. See Hill, 472 U.S. at 455. The fact that Petitioner denied that he possessed fermentation or distillation materials, or that the evidence presented at the hearing was not overwhelming, does not alter the conclusion that the hearing officer's decision was supported by "some evidence." Therefore, the state court reasonably concluded there was some evidence to uphold the decision of the hearing officer. Accordingly, Petitioner's due process claim lacks merit, and the Court recommends the petition be denied.

## III.  RECOMMENDATION

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be

1  DENIED with prejudice, and all pending motions be dismissed as moot.

2  This Findings and Recommendation is submitted to the assigned United States District
3  Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the
4  Local Rules of Practice for the United States District Court, Eastern District of California.
5  Within fourteen (14) days after the date of service of this Findings and Recommendation, any
6  party may file written objections with the Court and serve a copy on all parties.  Such a
7  document should be captioned "Objections to Magistrate Judge's Findings and
8  Recommendation."  Replies to the Objections shall be served and filed within fourteen (14)
9  days after service of the Objections.  The Finding and Recommendation will then be submitted
10 to the District Court for review of the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636
11 (b)(1)(c).  The parties are advised that failure to file objections within the specified time may
12 waive the right to appeal the Order of the District Court.  Martinez v. Ylst, 951 F.2d 1153 (9th
13 Cir. 1991).

15 IT IS SO ORDERED.

16 Dated:   March 24, 2012                        /s/ *Michael J. Seng*
                                                UNITED STATES MAGISTRATE JUDGE